MARY SHAW, as Administratrix, etc., Respondent, *v.* CHARLES L. SHELDON *et al.*, appellants.

*Court of Appeals, November 23, 1886.*

Reversing same case, 37 Hun, 639, Mem.

1. *Negligence. Master and servant.*—A foreman of the rollers in a rolling mill, who is a skilled workman, accustomed to the machinery and the service, and has the capacity and ability fully to appreciate the consequences of leaving the couplings uncovered, where the fact is entirely obvious and the resultant peril plain at a glance, assumes the risk of injury from the observed and obvious omission.

2. *Same.*—The fact that the superintendent asked the deceased if he wanted the couplings covered, and that the latter declined the precaution, conclusively proved that the servant took upon himself the risks of the omission and freed the employer from responsibility.

Action to recover damages for negligently causing the death of plaintiff's intestate, who was an employee in defendant's rolling mills.

Appeal from a judgment of the general term of the supreme court, affirming judgment entered upon a verdict.

The opinion of the general term states the facts as follows:

"The defendants carried on a rolling mill at Auburn, and the deceased was employed by them as a 'roller.' In the process of the defendants' manufacture, heated bars of iron were pressed between heavy rollers of corrugated iron. To prevent the rollers from becoming injuriously heated by the process they were supplied with water which was conveyed in a trough suspended above the rollers. When revolving, the rollers were dangerous in case any of the employees came in contact with them. There is testimony tending to show that it was usual in most rolling mills to cover the couplings of the rollers with wood or metal. It also appeared that when deceased first entered defendants' employ, a wooden cover had been provided for the couplings, which was afterwards destroyed, and for some time before his death the couplings remained uncovered, with the exception of a partial protection consisting of an iron tub or 'bosh' placed in front of the coupling, which, however, did not serve the purpose of a complete covering.

"On the night of May 18, 1883, while deceased was at work on the finishing rolls he was told by one of his co-employees that the water was not running from the trough to the rollers. The trough was higher than Shaw's head, and he stepped upon the iron 'bosh' and was seen to look into the trough. While so standing his foot slipped, or his clothing was caught by the suction of the revolving couplings and he came in contact with the rollers and received injuries of which he died eleven days thereafter.

"It was a common thing for the flow of water from the trough to be interrupted and for one or the other of the employees to step upon a bosh to look into the trough for the cause of the stoppage. This occurred on an average several times a day. On such occasions the rolls were not stopped. Owing to the frequency with which the men in the mill had stepped upon the bosh for the purpose of looking into the trough, the top of the bosh had been worn smooth

by their hobnailed shoes. Shaw might have looked into the trough by passing around the machinery, going to the rear of the rolls and stepping upon a plate which projected from the machine."

"The duty of examining the troughs was not imposed upon any particular person. Any of the employees who happened to be in a situation to look, or who was not otherwise employed, considered it his duty to examine whenever the flow of water stopped."

The trial judge charged the jury, among other things, as follows:

"I say to you further that Mr. Thompson testifies that some time before this accident, a few weeks after Mr. Thompson assumed the superintendency of this mill, he asked Mr. Shaw if he did not want the boards put up there as guards, and that Shaw told him he did not want them, that Rush had them but they were in the way, and they had been broken and thrown away and he did not want them. It is true that this conversation is related by Mr. Thompson as occurring when nobody was present except himself and the deceased. The question is whether or not you believe that testimony. Mr. Thompson appears to be a fair minded man for aught that appears upon this trial. If Thompson did ask him if he did not want the boards put up there, and Shaw declined to have them put up, it is a circumstance, gentlemen, that you must take into account in determining the question whether or not Shaw himself was not guilty of some act or omission for his own safety which materially contributed to this injury.

"These questions, gentlemen, must be decided by you in favor of the plaintiff before she can recover. I express no opinion upon either of them. If you shall find them both in her favor, namely : that the accident occurred solely through the negligence of the defendants and that Shaw himself was guilty of no carelessness which contributed to the injury, then you will come to the subject of damages,

13

which I stated to you in the outset of my charge to you. Your verdict should be either for the plaintiff, giving the amount which you shall say from the evidence the life of Shaw was fairly worth to the next of kin, or it should be a general verdict for the defendants.

" The defendants thereupon excepted to that part of the charge in which the court left it to the jury to determine whether, when Shaw entered upon defendants' employment the last time, when he was employed before the accident, he accepted the risks occasioned by the known absence of the boards in front of the couplings or rolls.

" The jury rendered a verdict for the plaintiff for $2,500, and thereupon the judge presiding at the trial, upon the application of defendants, did direct an order to be entered that the exceptions taken by defendants on said trial be heard at the first instance at the general term and that judgment be suspended in the meantime; and such order was thereupon duly made and entered."

*Richard C. Steele*, for appellant.

*Louis Marshall*, for respondent.

PER CURIAM.—The majority of the court are of opinion that this judgment should be reversed, for the reason that the facts established beyond dispute that the injured employee entered the service and remained in it with a full knowledge and appreciation of the risk and danger resulting from leaving the couplings uncovered. The fact was entirely obvious, the resultant peril plain at a glance, and the injured servant a skilled workman, a foreman of the rollers, accustomed to the machinery and the service, and having the capacity and ability to fully appreciate the consequences of leaving the couplings uncovered. Within the rule applicable to such cases the plaintiff's intestate took upon himself the risk of injury from the observed and obvious omission.

The court are also of opinion that the trial judge erred in charging the jury that if they believed the evidence of the superintendent that he asked the deceased if he wanted the couplings covered, and the latter declined the precaution, it was a circumstance for them to consider upon the question of the assumption of consequent dangers by the deceased.

If the fact sworn to was true, it conclusively proved that the servant took upon himself the risks of the omission and freed the employer from responsibility. The jury should have been so charged. The principal doubt among us on this branch of the case has been whether the defendants' exception was sufficient to bring up the question.

The judgment should be reversed and a new trial granted; costs to abide the event.

All concur, except RUGER, Ch. J.; DANFORTH and FINCH, JJ., dissenting.